IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRYAN H., <br><br> Claimant, <br><br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Respondent. | No. 19 C 2244 <br><br> Magistrate Judge Jeffrey T. Gilbert |

## MEMORANDUM OPINION AND ORDER

Bryan H.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying his applications for disability insurance benefit and supplemental security income under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 405(g) and 1383(c). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties consented to the exercise of jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 6]. This Court, therefore, has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and this matter is fully briefed and ripe for review. *See* [ECF Nos. 14, 21, 22].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Memorandum in Support of Summary Remand [ECF No. 14] is granted, and the Commissioner's Memorandum in Support of Motion for Summary Judgment [ECF No. 21] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with this Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On November 3, 2015, Claimant filed applications for disability insurance benefits and supplemental security income, alleging a disability beginning on November 18, 2014. (R.228-235). The applications were denied initially on March 25, 2016 (R.67-92), and again on reconsideration on August 16, 2016 (R.140-149), after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.150-151). On November 28, 2017, Claimant appeared and testified at a hearing before ALJ Lana Johnson. (R.36-66). At the hearing, Claimant was represented by attorney Rachel King. (R.38-39). During the hearing, the ALJ also heard testimony from vocational expert ("VE") Kari Seaver. (R.60-65).

On March 28, 2018, the ALJ issued her decision denying Claimant's applications for disability insurance benefits and supplemental security income. (R.17-29). In finding Claimant was not disabled within the meaning of the Act, the ALJ followed the five-step evaluation process required by Social Security Regulations for individuals over the age of 18. *See* 20 C.F.R. §§ 404.1520(a) and 416.920(a). At step one, the ALJ found that Claimant met the insured status requirement of the Social Security Act through June 30, 2016, and that Claimant had not engaged in

substantial gainful activity since November 18, 2014, the alleged onset date of his disability. (R.19). At step two, the ALJ found that Claimant has severe impairments, including major depressive disorder, social phobia, panic disorder, agoraphobia, obsessive compulsive disorder ("OCD"), attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), avoidant personality disorder, degenerative disc disease of the lumbar spine, and obesity. (R.19).

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926). (R.20). The ALJ also considered the severity of Claimant's mental impairments, individually and in combination, and determined that his impairments did not meet or medically equal the criteria of listings 12.03, 12.04, or 12.06. (R.23).

The ALJ then determined that Claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c), including frequent climbing of ladders, ropes, scaffolds, ramps, and stairs and frequent stooping, kneeling, crouching, and crawling. (R.22). The ALJ further found that in light of moderate limitations in concentration, persistence, and pace, Claimant has the ability to understand, remember, and carry out simple routine tasks and use judgment limited to simple work-related decisions. (R.22). Due to moderate limitations in social interactions, the ALJ also concluded that Claimant is

limited to occasional interaction with supervisors and coworkers and brief and superficial interaction with the public. (R.22).

At step four, the ALJ found that Claimant is not able to perform any past relevant work. (R.27). The ALJ finally concluded at step five that Claimant could perform a significant number of jobs in the national economy, including hand packer, assembler, or sorter, which were identified by the VE. (R.27-28). Based on all these reasons, the ALJ found Claimant was not disabled under the Act. (R.28-29).

The Appeals Council declined to review the matter on February 5, 2019 (R.1-3), making the ALJ's decision the final decision of the Commissioner. Therefore, this Court now has jurisdiction to review this matter. *See* 42 U.S.C. § 405(g); *see also Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *See Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether an ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

Claimant raises multiple arguments challenging the ALJ's decision, including: (1) the ALJ erred in not considering Claimant's need for and reliance on a service animal and Claimant is entitled to disability benefits due to his need for a service animal; (2) the ALJ's evaluation of Claimant's treating physicians is deficient; (3) the

ALJ's assessment of Claimant's mental RFC is not supported by substantial evidence; (4) the ALJ's assessment of Claimant' s physical RFC is not supported by substantial evidence; and (5) the ALJ improperly evaluated Claimant's subjective symptoms. The Court will address the arguments that figure into the Court's ruling below.

### I. The ALJ Does Not Address Claimant's Prescription For And Reliance On A Service Animal

Claimant leads with the argument that an award of benefits is mandated because the testimony of the VE establishes that Claimant is disabled due to his need for a service animal. The law is clear that a claimant must be able to perform a given job without an accommodation to be found not disabled. *See Cleveland v. Policy Management Systems Corp.* 526 U.S. 785, 803 (1999) ) ("[W]hen the SSA determines whether an individual is disabled for SSDI purposes, it does not take the possibility of 'reasonable accommodation' into account, nor need an applicant refer to the possibility of reasonable accommodation when she applies for SSDI."). And the VE specifically testified at the hearing use of a service animal was an accommodation and would "typically not be allowed" in jobs she identified, including sorter, hand packer, and assembler. (R.64-65).

The record shows that in June 2016 Claimant's treating physician Brent Cutro, D.O., prescribed a service dog for Claimant due to his"[d]ebilitating general anxiety, panic disorder and agoraphobia," opining that a service animal was likely to "greatly increase" his "ability to function and complete normal daily activities." (R.528). Almost five months later in November 2016, Anita Bhardwaj, M.D., another treating physician, also prescribed a service dog to help with Claimant's chronic PTSD and

anxiety. (R.529). Richard Abrams, M.D., a third treating physician, opined that Claimant was "markedly limited" in many activities—such as maintaining attention and concentration for extended periods and getting along with co-workers or without unduly distracting them or exhibiting behavioral extremes—because he could not perform these activities without the assistance of his service animal or medication. (R.547).

Nowhere in her opinion does the ALJ address the fact that two treating physicians prescribed a service animal for Claimant and a third treating physician concluded that Claimant had marked limitations because he relied on a service animal and medication to function. The ALJ also did not address the VE's testimony that use of a service animal was an accommodation and would "typically not be allowed" in the sorter, hand packer, and assembler jobs. (R.64-65). Despite the record evidence and the VE's testimony, the ALJ does not discuss Claimant's need for a service animal or explain whether, or how, she determined that Claimant is able to work despite his reliance on his service dog. *See Strain v. Berryhill*, 2018 WL 4347335, *4 (N.D. Ind. Sept. 12, 2018) (remanding when "the ALJ never bothered to explain whether she credited [the claimant's] asserted need to be accompanied by his service dog").

The ALJ's stated reason for rejecting Dr. Cutro's opinion was that it was inconsistent with evidence that "reflect[ed] intact cognitive abilities." (R.25). The record, however, shows Dr. Cutro did not prescribe a service animal because of Claimant's cognitive abilities (or lack thereof), but because of his "[d]ebilitating"

7

anxiety, panic disorder, and agoraphobia (R.528), and Dr. Abrams found that Claimant was "markedly limited" in many activities—such as maintaining attention and concentration for extended periods and getting along with co-workers or without unduly distracting them or exhibiting behavioral extremes—because he could not perform these activities without the assistance of his service animal and/or medication. (R.547). Claimant's need for and reliance on his service animal is not necessarily inconsistent with his cognitive abilities, and the ALJ does not explain why she was not persuaded that Claimant needed a service animal to function. The ALJ's failure to address adequately the evidence regarding Claimant's use of and reliance on his service dog is material.

In explaining her decision, the ALJ is not required to provide a complete and written evaluation of every piece of testimony and evidence, but she must build a logical bridge from the evidence to her conclusion. *Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). An ALJ's analysis "must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Because the ALJ failed to address Claimant's reliance on a service animal, her analysis in deficient. It not clear if she considered the totality of Claimant's limitations, including his reliance on a service animal to function, and this Court will not, and cannot, speculate. Therefore, this case must be remanded to the Social Security Administration for further proceedings.

## II. The ALJ Did Not Provide Sufficient Reasons For Discounting Claimant's Treating Physicians And Other Medical Opinion Evidence

Claimant next argues that the ALJ did not adequately evaluate the medical opinion evidence. An ALJ must give controlling weight to a treating physician's opinion if it is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. *See* 20 C.F.R. § 416.927(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Because a treating physician has "greater familiarity with the claimant's condition and circumstances," an ALJ "must offer good reasons for discounting a treating physician's opinion." *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Those reasons must be "supported by substantial evidence in the record; a contrary opinion of a non-examining source does not, by itself, suffice." *Gudgel*, 345 F.3d at 470.

Even if an ALJ gives good reasons for not giving controlling weight to a treating physician's opinion, she still must decide what weight to give that opinion. *Campbell*, 627 F.3d at 308. To do this, the ALJ must, by regulation, consider a variety of factors, including: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) whether the physician was a specialist in the relevant area; and (6) other factors that validate or contradict the opinion. *See* 20 C.F.R. § 416.927(c)(2)-(6); *see also Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir.

9

2014). "An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill*, 878 F.3d 598, 605 (7th Cir. 2017).

In this case, Claimant argues that the ALJ improperly rejected the opinions of his treating physicians, Dr. Cutro and Dr. Abrams, and erred in not giving them controlling weight. Claimant's Brief [ECF No. 14], at 4-5. In her decision, the ALJ wrote that their opinions were "inconsistent with the evidence of record reflecting cognitive abilities, independence with activities of daily living, and use of medication to control his mental symptomology." (R.25). Claimant argues, among other things, that the ALJ failed to explain what "intact cognitive abilities" in the record contradicted their opinions. Claimant's Brief [ECF No. 14], at 4.

In response, the Commissioner contends that the ALJ noted that Claimant did not have any reported problems following instructions or inability to answer questions appropriately and also noted that Claimant's cognitive abilities were intact. Commissioner's Brief [ECF No. 21], at 4 (citing R. 21, 351, 472, 484, 743). That evidence may very well be in the record. The problem is the ALJ did not explicitly cite any of that evidence when she explained she was not giving any weight to Claimant's physicians' opinions.

The Court agrees with Claimant that the ALJ did not identify how his cognitive abilities undercut the opinions of Dr. Cutro or Dr. Abrams. The Commissioner cannot justify an ALJ's decision with record evidence not specifically relied on by the ALJ. *See Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010); *Spiva v. Astrue,* 628 F.3d 346, 348 (7th Cir. 2010). And the Commissioner ignores other evidence in the record that

supports the opinions of Dr. Cutro and Dr. Abrams and on which Claimant relies. Claimant's Brief [ECF No. 14], at 4, (citing R.50, 51, 56, 57, 58, 76, 106, 107, 258, 284, 289, 294, 346, 367, 482, 531, 533, 538, 544, 704, 722).

The Court also agrees with Claimant that the ALJ's reliance on his activities of daily living and use of medication was not sufficiently addressed. It is well-settled law that the ALJ cannot selectively discuss certain evidence as support to show that the opinions of Dr. Cutro and Dr. Abrams were not supported without addressing contrary evidence. There is some evidence in the record that Claimant's activities of daily living is consistent with his reported inability to leave the house and be around other people. Claimant's Brief [ECF No. 14], at 16-17. While Claimant did testify that medication helped reduce the length and intensity of his panic attacks (R.51), he also testified that he was unable to leave the house for more than four hours at a time. (R.57-68). The ALJ did not address that testimony. There also is other evidence in the record that Claimant continued to experience significant symptoms despite medication, and that his medication was not always effective. (R.367, 434, 504, 531-32, 685, 703, 722).

The Seventh Circuit has recognized that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about [his] overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011). The ALJ's failure to discuss evidence contrary to her determination warrants remand because an ALJ cannot cherry-pick evidence that supports her decision without addressing evidence that is contrary to her conclusion. *Scott*, 647 F.3d at 740 (stating

11

that ALJs are not permitted to cherry-pick medical evidence from "mixed results to support a denial of benefits"); *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010).

Finally, Claimant argues that the ALJ did not sufficiently explain why she afforded only "partial weight" to the opinion of the state agency physician David Biscardi, Ph.D., who opined that Claimant had marked limitations in his ability to interact appropriately with the general public, could sustain only one to three step tasks, and could interact briefly and superficially with coworkers and supervisors, but was unable to interact with the public. (R.25). In her opinion, the ALJ concluded that "the evidence of record reflects that the claimant is less limited in public interactions than Dr. Biscardi assessed, as evidenced by the claimant's ability to navigate public spaces and perform activities of daily living independently, such as grocery shopping and medical visits." (R. 25). However, there is evidence in the record that Claimant was not able to successfully navigate public spaces.

For example, Claimant frequently reported an inability to go out in public for even brief periods and was diagnosed with agoraphobia. (R.367, 434, 447, 504, 531, 543, 683). There also is evidence in the record that Claimant had a panic attack at the grocery store and had to go to the emergency room. (R.367). He also reported being "almost too scared to come into the doctor" (R.447), and described increased stress due to having a psychiatrist appointment. (R.517). The Court does not know how, or if, the ALJ weighed any of the evidence that contradicts her evaluation of Dr. Biscardi's opinion. In any event, the Court cannot discern how the ALJ weighed this evidence and will not speculate. It is well-established that an ALJ must not substitute

12

his own judgment for a physician's opinion without relying on other medical evidence or authority in the record. *Rohan v. Chater,* 98 F.3d 966, 968 (7th Cir. 1996); *Buechele v. Colvin,* 2013 WL 1200611, at *11 (N.D. Ill. Mar. 25, 2013). And as mentioned above, an ALJ cannot cherry pick which evidence to evaluate and disregard other critical evidence. *See Scrogham v. Colvin,* 765 F.3d 685, 696-99 (7th Cir. 2014); *Myles v. Astrue,* 582 F.3d 672, 678 (7th Cir. 2009).

The Court cannot, and will not, make assumptions about how the ALJ evaluated and weighed the medical evidence when there is good reason in the record to question whether the ALJ considered certain material evidence and if so, how that evidence was taken into consideration and weighed when deciding what weight to give the medical opinion testimony. Therefore, the case must be remanded for further explanation from the ALJ.

### III. The ALJ's Subjective Symptom Analysis Is Not Supported By Substantial Evidence

Claimant also argues that the ALJ improperly discounted his functional limitations and complaints of anxiety and panic attacks and did not address record evidence that supported those limitations and complaints. Specifically, the ALJ found that Claimant's "statements concerning the intensity, persistence and limiting effects" of his symptoms were "not entirely consistent" with the record. (R.23). In Claimant's view, the ALJ used boilerplate and conclusory language in describing her decisional process and did not explain which of his statements, limitations, and complaints were inconsistent with the record.

13

In response, the Commissioner provides a summary of the law and describes what an ALJ is required to do when evaluating Claimant's subjective complaints. Commissioner's Brief [ECF No. 17], at 12-15. Essentially, the Commissioner argues that, although the ALJ may not have provided the level of explanation Claimant preferred, a fair reading of the ALJ's decision shows that she sufficiently articulated and supported her subjective symptoms analysis and, therefore, her decision should be affirmed. Commissioner's Resp., [ECF No. 17], at 12-15. However, like the ALJ's decision, the Commissioner's argument is not grounded in the record but rather on broad conclusory statements that the ALJ "reasonably found that, while [Claimant's] impairments caused significant limitations, his subjective statements of symptoms were not entirely consistent with the medical evidence and other evidence in the record." Commissioner's Resp., [ECF No. 17], at 13 (citing R.23).

The Court agrees with Claimant. As discussed above, the ALJ did not address pertinent parts of the record evidence or Claimant's testimony when discussing his activities of daily living and his limitations. The ALJ's extremely sparse examination of Claimant's testimony seriously hinders the Court's ability to engage in a meaningful review of her decision. *Eakin v. Astrue*, 432 Fed. Appx. 607, 611 (7th Cir. 2011). The Seventh Circuit has held that without an adequate explanation, a conclusion that a claimant's statements are "not entirely" credible or consistent is "meaningless boilerplate." *See Stark v. Colvin*, 813 F.3d 684, 688 (7th Cir. 2016).

An ALJ is required to evaluate a claimant's activities of daily living. SSR 16-3p; 20 C.F.R. § 404.1529(c)(3)(i); 20 C.F.R. § 416.929(c)(3)(i). In this case, however,

14

the ALJ hardly mentioned Claimant's daily activities, aside from noting that he was only able to shop at three o'clock in the morning to avoid spending time with others, and checked his locks six or seven times a day. (R.23). The law requires that an ALJ must do more than summarize a claimant's activities. Instead, an ALJ must articulate whether or not they accept the reported activities as consistent with a claimant's reported symptoms and limitations. *See* SSR 16-3p; *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009) (remanding where the ALJ "briefly described" the claimant's testimony about her activities, but did not explain whether her "daily activities were consistent or inconsistent with the pain and limitations she claimed").

Here, there is more than a little evidence that Claimant's activities of daily living are consistent with his reported limitations. Specifically, Claimant testified that he is able to shop at three o'clock in the morning due to his desire to avoid others and prevent panic attacks. (R.50, 51, 57). He further testified that he is unable to drive farther than the 10-mile radius of his home, and if he wanted to go farther, he had to get medical transport. (R.41). Claimant also explained that he needed a few days to prepare to go to a place that would be crowded or public. (R.57) (stating that "[b]efore I leave my house I have to make sure I take all my meds, and then in addition to that I usually take a Xanax a half hour before I'm going to leave the house just to make sure that I'm going to be mellowed out, and that's anytime I leave the house"). His mother wrote that he was not able to attend sporting events or church and did not finish his Master's degree, because there would be too many people around. (R.299). Other record evidence shows that Claimant had to check the locks on his

15

doors many times a day, approximately once an hour, and that when he left the house, he often would have an anxiety or panic attack if he did not leave within five to ten minutes. (R.346-46). Given this evidence, the ALJ, at a minimum, should have addressed Claimant's testimony about his daily activities and should have explained if/why she found it to be inconsistent with his reported limitations. *See Ghiselli v. Colvin*, 837 F.3d 771, 778 (7th Cir. 2016).

An ALJ also is required to evaluate a claimant's medication and other forms of treatment he pursues to relieve his mental and physical symptoms. SSR 16-3p ("Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments . . . may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent."); 20 C.F.R. §§ 404.1529(c) and 416.929(c)(3). The record reflects that Claimant took a variety of medication, including Lamotrigine, Bupropion, Klonopin, Xanax, and Tramadol, among others. (R.324). He also received injections (R.566, 581), pursued physical therapy (R.48), used a TENS unit (R.52), and pursued exposure therapy (R.58, 683, 703). The ALJ noted some of these treatments in her decision (R.23), but she did not explain why they did not support Claimant's reported limitations and symptoms. In the Court's view, Claimant's use of these medications and treatments could provide some support his statements and subjective symptoms.

The Court is mindful of the deference that is owed to an ALJ's decision under the substantial evidence standard and that a reviewing court should not substitute its judgment for that of the ALJ's by re-weighing the evidence. Although this

16

standard is generous, it is not entirely uncritical. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). The Court agrees with Claimant that the ALJ's explanation for her decision in this case is legally insufficient. This does not mean the Court agrees with Claimant that he is disabled and cannot work within the meaning of the applicable law. Rather, it means that the ALJ did not sufficiently explain her decisional process and analysis of Claimant's subjective symptoms for the Court to be able to conclude that the RFC determination and ultimate decision are supported by substantial evidence under the controlling standard of review. When an ALJ's decision "lacks evidentiary support or is so poorly articulated as to prevent meaningful review," as is the case here, the case must be remanded. *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

**III. Remaining Issues**

Because the Court is remanding this case on the errors discussed above, it need not address the other arguments posited by Claimant on appeal since any additional analysis would not change the result in this case and should be addressed on remand. The Commissioner, however, should not assume the Court agrees with the ALJ's analysis of those issues. Similarly, Claimant also should not make assumptions either. Rather, it simply is unnecessary for the Court to address Claimant's other arguments in a case that is being remanded anyway. This is particularly true when the Court's remand will affect the ALJ's RFC assessment and, as a result, the other issues Claimant has raised.

In conclusion, the Court expresses no opinion about the decision to be made on remand but encourages the ALJ to provide a more fulsome explanation of her analysis and to do what is necessary to build a logical bridge between the evidence in the record and the ultimate conclusions, whatever those conclusions may be. *See Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("On remand, the ALJ should consider all of the evidence in the record, and, if necessary, give the parties the opportunity to expand the record so that he may build a 'logical bridge' between the evidence and his conclusions."); *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000).

## CONCLUSION

For the reasons discussed above, Claimant's Memorandum in Support of Summary Remand [ECF No. 14] is granted, the Commissioner's Motion and Memorandum in Support of Motion for Summary Judgment [ECF No. 21] is denied. This case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: July 27, 2022